### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| ABIGAIL A. RUDD, MARINTHA HEIL, and THOMAS S. ABNEY and JENNIFER L. ABNEY, on their own behalf and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. CV-09-P-1018-S |
| v. | ) ) | JURY TRIAL DEMANDED |
| AMERICAN HOME SHIELD CORPORATION, | ) ) ) | |
| Defendant. | | |

### SECOND AMENDED
### NATIONWIDE CLASS ACTION COMPLAINT

Plaintiff Abigail A. Rudd and Marintha Heil, on behalf of their selves and all others similarly situated, pursuant to Court order granting leave to do so, hereby amend their complaint against defendant American Home Shield Corporation ("defendant" or "AHS") adding plaintiffs Thomas S. Abney and Jennifer L. Abney, a married couple, on behalf of their self and all others similarly situated as follows.

### PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Abigail A. Rudd ("plaintiff" or "Rudd") is an adult resident citizen of Alabama and of this district and division.

2.      Plaintiff Marintha Heil ("plaintiff" or "Heil") is an adult resident citizen of Maryland.

3.      Plaintiffs Thomas S. Abney and Jennifer L. Abney ("Abneys") are married and adult resident citizens of Jefferson County, Alabama.

4. Defendant AHS is a business corporation organized under and existing pursuant to the laws of the state of Delaware, with its principal place of business in Delaware.

5. This is a class action with class members located throughout the United States. Less than one-third of the class members reside in Alabama. The defendant is not a citizen of Alabama. The amount in controversy exceeds $5,000,000.00 (five million dollars) exclusive of interest and costs. Accordingly, diversity jurisdiction exists pursuant to 28 U.S.C. § 1332(d) (as modified by the Class Action Fairness Act of 2005).

6. This case alleges violations of Section 8 of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607 ("RESPA"). This case thus arises under the laws of the United States. Accordingly, federal question jurisdiction exists pursuant to 28 U.S.C. § 1331.

7. AHS is qualified to do business and conducts business in this district and division. This court accordingly has personal jurisdiction over the defendant, and thus venue is appropriate pursuant to 28 U.S.C. § 1391.

## ALLEGATIONS COMMON TO THE CLASS

8. This case pertains to defendant's uniform, nationwide practice of charging home warranty premiums in connection with the settlement or closing of home mortgage loans in a manner that violates RESPA, specifically Section 8(a), which prohibits, among other things, the giving or accepting of fees in exchange for the referral of any "service involving a federally related mortgage loan" to "any person."

9. AHS is in the business of selling home warranties under which homeowners pay a premium (or a premium is paid on the homeowner's behalf) in exchange for services AHS provides in the event that certain components of a home require repair or replacement.

10. AHS markets its warranties through, among other avenues, real estate brokers involved in the sale of homes that are purchased using home mortgage loans. AHS has business

relationships with real estate brokers throughout the United States. These brokers are encouraged to sell AHS warranties to home buyers and sellers in connection with home purchases. The premium for a 1-year home warranty is collected from the home buyer or seller in connection with the settlement and closing of the home purchase and related mortgage documents. AHS has an understanding with the real estate brokers that it will pay a fee denominated a "marketing fee" or "administrative fee" to real estate brokers who sell AHS home warranties. The real estate brokers, pursuant to this understanding, pocket, as their fee, a portion of the home warranty premium that is paid by the home buyer or seller in connection with the settlement or closing of the home mortgage loan.

   11. The U.S. Department of Housing and Urban Development ("HUD"), the federal agency charged with interpreting, enforcing, and promulgating regulations under RESPA, has expressly found that arrangements where a real estate agent receives a fee only when a consumer purchases a home warranty product is uniformly a violation of Section 8 RESPA. *See* letter from Paul Ceja, HUD's Assistant General Counsel, to Dr. Gary Lacefield dated February 21, 2008, attached hereto as Exhibit A. RESPA's Section 8 provides, in pertinent part:

> (a) No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

In HUD's February 21, 2008 letter opinion, HUD notes that its RESPA regulations provide that a "settlement service" subject to Section 8(a) includes "services involving homeowner's warranties." Ex. A, *citing* 24 C.F.R. § 3500.2. HUD further noted that Section 8(c) of RESPA "provides on exception to this prohibition on fees and kickbacks for bona fide compensation for "good or facilities actually furnished for services actually performed." HUD stated that this exception would not apply in a situation where the real estate agent was only compensated if the

warranty was actually purchased. "Because the payments are based on the number of successful transactions, they appear to be payments made pursuant to an agreement or understanding to refer business to the [home warranty company, and not payments for services actually performed." Exhibit A, p. 2. Furthermore, characterizing "such arrangements as "marketing" or "administrative" agreements does not render the underlying conduct legal." *Id.* These kinds of payments made by home warranty providers to real estate agents are "only a means to facilitate payments for referrals by persons in a position to refer settlement service business, in violation of RESPA." *Id.*

12. Accordingly, as a matter of law, the practice of paying fees to real estate brokers in connection with their placing home warranties with home buyers, where the payment to the real estate agent is conditioned upon a successful transaction selling the warranty product, is a violation of Section 8(a) of RESPA, 12 U.S.C. § 2607(b). It constitutes the giving of a fee for the referral of services related to a federally related mortgage loan. It does not matter, under HUD's authoritative interpretation, that the home warranty provider claims that the real estate agent performed "some" services in connection with the home warranty. Pursuant to HUD, where "the payments are based on the number of successful transactions," the payment violates Section 8(a) of RESPA as a matter of law. This is so because in such circumstances, the payments are "made pursuant to an agreement or understanding to refer business" to AHS, and "not payments for services actually performed."

## ALLEGATIONS PERTAINING TO PLAINTIFF ABNEYS

13. Mr. and Mrs. Abney sold a home located at 5421 Wisteria Trace, Trussville, AL. 35173-6317. The sale was financed using a federally related mortgage loan from Hometown Mortgage Services, Inc., and closed on July 30, 2008.

14. In connection with the home sale, the Abneys were represented by a real estate agent from Crawford Realty, and the buyer, Thomas B. Morse, was represented by Carol McGiboney, a real estate agent with Realty South Inverness.

15. At the July 30, 2008 closing of the 5421 Wisteria Trace house sale, one of the items listed among the Abneys' closing costs was a charge for $524 for a one-year home warranty purchased from AHS. Upon information and belief, a portion of that $524 charge that the Abneys paid at closing went to a real estate agent in exchange for referring the Abneys' home warranty business to AHS. AHS paid this charge to the real estate agent for the referral.

## CLASS ACTION ALLEGATIONS

16. Plaintiffs bring this action on their own behalves and on behalf of others similarly situated as a nationwide class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

17. The class which plaintiffs seek to represent is composed of and defined as:

> All persons in the United States of America who have purchased from the defendant a home warranty in connection with the sale or purchase of a home financed by a federally related mortgage during the applicable statute of limitations period, where any portion of the premium was paid to any real estate agent involved in the transaction, where such payments were conditioned upon the successful completion of the transaction selling the home warranty. Excluded from the class are the defendant, all officers, directors, employees, or agents of the defendant, and any agency or employee of the United States government acting in their official capacity.

18. This action has been brought and may properly be maintained as a class action pursuant to the provisions of the Rule 23(a)(l)-(4) and Rule 23(b) of the Federal Rules of Civil Procedure, and satisfies the numerosity, commonality, typicality, adequacy and superiority requirements thereof because:

(a) The plaintiff class is so numerous that the individual joinder of all members is impracticable under the standard of Fed. R. Civ. P. 23(a)(l).

   (b) Common questions of law and fact exist as to all members of the class, as required by Fed. R. Civ. P. 23(a)(2), and predominate over any questions which affect only individual members of the class within the meaning of Fed. R. Civ. P. 23(b)(2). These common questions of law and fact include, without limitation:

    (1) Whether defendant has engaged in a violation of law as alleged herein;

    (2) Whether defendant by nature of its wrongful conduct is liable for damages and losses resulting from the conduct alleged herein; and

    (3) Whether the defendant had a policy and uniform practice of violating RESPA in connection with the sale of home warranties, as alleged herein.

   (c) Plaintiffs' claims are typical of the claims of the members of the class under Fed. R. Civ. P. 23(a)(3). The plaintiffs and all members of the class sustained damages arising out of defendant' common course of conduct in violation of law as complained herein. The losses of each member of the class were caused directly by defendant's wrongful conduct in violation of law as alleged herein.

   (d) The individual and representative plaintiffs will fairly and adequately protect the interests of the class as required by Fed. R. Civ. P. 23(a)(4). Plaintiffs have no interests which are adverse to the interests of the class members. Plaintiffs are adequate representatives of the class and any subclass as designated by the court. Plaintiffs have retained counsel who have substantial experience and success in the prosecution of class action and consumer litigation.

   (e) The scheme affected all class members similarly. Each plaintiff and class member paid a fee in connection with a federally related mortgage closing that violates Section 8 of RESPA.

   (f) A class action is superior to other available methods for the fair and efficient adjudication of this controversy under Fed. R. Civ. P. 23(b) since individual joinder of all members of the class is impracticable. Furthermore, as the damages suffered by each individual member of the class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them. The cost to the court system of adjudication of such individualized litigation would be substantial. Individualized litigation would also present the potential for inconsistent or contradictory judgments and would magnify the delay and expense to all parties and the court system in multiple trials of the factual issues of the case. By contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves the resources of the parties and the court system, and protects the rights of each class member

## PRAYER FOR RELIEF

 WHEREFORE, the premises considered, plaintiff Abigail A. Rudd, Marintha Heil, and Thomas S. Abney and Jennifer L. Abney, on their own behalves and on behalf of those similarly situated, pray that the Court will:

 A. Take jurisdiction of this action and certify it as a nationwide class action, appointing D. Frank Davis and John E. Norris as class counsel;

 B. Award damages to plaintiffs and the class in an amount equal to three times the amount of any charge paid for the settlement service of providing a home warranty;

 C. Award court costs together with reasonable attorney's fees and expenses;

 D. Award prejudgment and post-judgment interest; and

 E. Award such further, different, or additional relief as the Court deems appropriate.

                                      Respectfully Submitted,

                                      DAVIS & NORRIS, LLP

                                      /s/ D. Frank Davis
                                      D. Frank Davis
                                      John E. Norris
                                      Wesley W. Barnett
                                      Attorneys for Plaintiff

OF COUNSEL:

D. FRANK DAVIS
JOHN E. NORRIS
WESLEY W. BARNETT
DAVIS & NORRIS LLP
The Bradshaw House
2154 Highland Avenue South
Birmingham, Alabama  35205
Voice:  205.930.9900
Fax:  205.930.9989
fdavis@davisnorris.com
jnorris@davisnorris.com
wbarnett@davisnorris.com

## JURY DEMAND

      Plaintiff demands trial by jury.

## CERTIFICATE OF SERVICE

      This is to certify that pursuant to Rule 5 of the Federal Rules of Civil Procedure, the plaintiffs on this the 5th day of June, 2009, served a true and correct copy of the foregoing by U.S. Postal Service addressed as follows:

American Home Shield Corporation
c/o The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, AL 36109

                                      /s/ D. Frank Davis
                                      OF COUNSEL



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, DC 20410-0500

OFFICE OF GENERAL COUNSEL

FEB 21 2008

Dr. Gary Lacefield
Risk Mitigation Group
1402 W. Mayfield Road
Suite 400
Arlington, Texas 76015

Dear Dr. Lacefield:

This is in response to your letter addressed to Christopher Kinnear, at HUD's Fort Worth field office, in which you presented two scenarios where real estate agents are paid fees based upon the agents' relationships with home warranty companies (HWCs). You requested HUD counsel's response on your conclusion that both of these scenarios present violations of the Real Estate Settlement Procedures Act of 1974 (12 U.S.C. 2601-2617) (RESPA).

The first scenario described a "Marketing Agreement" between a real estate agent or real estate broker and a HWC. Under this agreement the real estate agent/broker agrees to perform numerous, varied, and sundry marketing-related services to promote the HWC's product. The real estate agent/broker is compensated only when the consumer purchases the HWC product.

The second scenario described an "Administrative Services Agreement" between a real estate agent or real estate broker and a HWC. Under this agreement the real estate agent/broker agrees to perform numerous, varied, and sundry administrative-related services to promote the HWC's product. As under a "Marketing Agreement," the real estate agent/broker is compensated only when the consumer purchases the HWC product.

This response is limited to the facts stated above, as you have presented them. Based on these facts it appears likely that the first type of arrangement (Marketing Agreement) constitutes a violation of Section 8 of RESPA (42 U.S.C. 2607). For the same reasons, it also appears likely that the second type of arrangement (Administrative Service Agreement) constitutes a violation of Section 8, although your description does not provide any details about the specific services that may be performed under these agreements. The experience of HUD's RESPA enforcement staff is that it would be difficult for real estate agents and brokers to establish that the services they provide in connection with a homeowner warranty merit additional compensation that is in accordance with Section 8 and HUD's regulations.

HUD's RESPA regulations define "settlement service" to include services involving homeowner's warranties. 24 C.F.R. § 3500.2. Section 8(a) of RESPA prohibits giving or accepting a fee or kickback for the referral of settlement service business in connection with a federally related mortgage loan. Section 8(b) prohibits giving or accepting any part of a charge for the rendering of a settlement service other than for services actually performed. Section 8(c) provides an exception to this prohibition on fees and kickbacks, for bona fide compensation for "goods or facilities actually furnished or for services actually performed." Section 3500.14(b) of HUD's regulations makes clear

2

that, with limited exceptions not applicable here, the referral of a settlement service is not a compensable service under RESPA. Section 3500.14(c) establishes that nominal services also are not compensable.

Under § 3500.14(f) of HUD's regulations "a referral is any oral or written action directed to a person which has the effect of affirmatively influencing the selection by any person of a provider of a settlement service...." Under RESPA and the regulations, an agreement or understanding that calls for someone in the position to refer settlement service business to affirmatively influence the selection by a person of a particular settlement service provider is an agreement or understanding for the referral of settlement service business. HUD's regulations permit a settlement service provider who is in a position to refer settlement service business, such as a real estate agent or broker, to receive additional compensation for providing additional settlement services that are actual, necessary, and distinct from the primary services provided by that person in a transaction (24 CFR 3500.14(g)(3)).

In the scenarios you presented, however, the payments related to homeowner warranties do not appear to be bona fide compensation. Because the payments are based on the number of successful transactions, they appear to be payments made pursuant to an agreement or understanding to refer business to the HWC, and not payments for services actually performed. Some factors that HUD would review in deciding whether such payments are for referrals, in violation of RESPA, rather than for compensable services, are how the person is paid, whether there is an exclusive arrangement, and whether the activity involved amounts to an endorsement of a particular settlement service provider.

This analysis is consistent with the position on payments to real estate agents for placing homeowner warranties that is set forth in the November 15, 1996, letter from Nelson A. Diaz, then-HUD General Counsel (Diaz letter), to which you referred in your correspondence. Characterizing such arrangements as "marketing" or "administrative" agreements does not render the underlying conduct legal. Each of the two HWC agreements as described in your letter appear to be only a means to facilitate payments for referrals by persons in a position to refer settlement service business, in violation of RESPA.

Please note that this response is an unofficial staff interpretation in accordance with 24 CFR § 3500.4(b). As such, the response does not constitute a rule, regulation, or interpretation of the Secretary of HUD for purposes of section 19 of RESPA (12 U.S.C. 2617), and no person may rely on this response to provide protection from liability under RESPA or HUD's implementing regulations. Nor is this response an endorsement of any service or product, or of any analyses, that you or your company provide.

Sincerely,

*[signature]*

Paul Ceja
Assistant General Counsel for GSE/RESPA