# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| THOMAS S. ABNEY and JENNIFER L. ABNEY, on their own behalf and on behalf of all others similarly situated, | } } } } | |
| Plaintiffs, | } } } | |
| v. | } } | Case No.:  2:09-CV-1018-RDP |
| AMERICAN HOME SHIELD CORPORATION, | } } } } | |
| Defendant. | } | |

## MEMORANDUM OPINION

This case is before the court on the parties' request for Final Approval of a class settlement. The court preliminarily approved the parties' Stipulation of Settlement on March 4, 2011 (the "Settlement").[1] (Doc. #38, Ex. 1).  On August 18, 2011 and November 11, 2011, the court scheduled fairness hearings. (*See* Docs. #73, 75).  At the hearing on August 18, the parties and the sole intervenor represented to the court that they believed the objections brought forth by the intervenor could be resolved by making improvements to the original settlement.  Therefore, the scheduled evidentiary hearing was postponed until November 11, 2011.  (*See* Docs. #73, 74).

The evidentiary hearing on November 11, 2011 was held pursuant to Federal Rule of Civil Procedure 23(e)(1)(A), which mandates judicial review of any "settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class."  The court has now thoroughly

---

[1] This Memorandum Opinion and Final Judgment incorporates by reference the definitions in the Settlement, and all applicable terms used herein shall have the same meaning as set forth in the Settlement.  The Settlement referred to herein, unless specifically noted otherwise, is that which has been modified by the Settlement Agreement by and among intervenor Michele A. Schuler, plaintiffs Thomas S. Abney and Jennifer Abney, individually and as class representatives, and defendant AHS (the "Intervenor Settlement Agreement").

examined and considered (1) the parties' briefs and evidentiary submissions, (2) the withdrawn objections made by the sole intervenor in this case (resolved by agreement but nonetheless considered by the court), (3) the arguments and evidence presented at the fairness hearing conducted on November 11, 2011, and (4) the court's own review of the case and procedural record.  For the following reasons, the court finds that the proposed Settlement[2] is fair, reasonable, and adequate and it is due to be approved.  Accordingly, the court enters this Memorandum Opinion and Final Judgment which approves the Settlement in full and the court also makes the findings of fact and conclusions of law set forth below.

I.      **Procedural Background**

      A.      **The Business of American Home Shield Corporation**

American Home Shield Corporation ("AHS") is in the business of servicing, administering, and selling Home Service Contracts.  Home Service Contracts (sometimes called "Home Warranty Contracts") are one-year service contracts for certain appliances and systems in residential homes.  An AHS Home Service Contract obligates AHS, in exchange for a fee, to arrange for a service technician to provide repair and replacement services under circumstances explained in the particular contract.

      B.      **The Claims**

Plaintiff Abigail A. Rudd filed her original complaint in this Action on May 26, 2009.  (Doc. #1). The complaint was amended on May 28, 2009, and again on June 8, 2009.  (Docs. #4, 6).  As a result of the amendments and subsequent voluntary dismissal of Abigail Rudd and Plaintiff Marintha Heil, Plaintiffs Thomas S. Abney and Jennifer L. Abney remained the named Plaintiffs and putative class representatives in the Action.

The original and amended complaints allege that AHS markets its Home Service Contracts though, among other means, real estate brokers involved in home sales.  Plaintiffs allege that a fee paid by AHS

_____

[2] *See* footnote 1, *supra*.

for services provided by the broker in connection with the sale of AHS's Home Service Contracts is an impermissible referral fee or kickback that is unlawful under § 8(a) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(a).  The portion of the charge allegedly paid by AHS to the real estate agent is the alleged impermissible referral fee at issue in this case.

The original and amended complaints in the Action relied on an informal letter, dated February 21, 2008, written by Paul Ceja, an attorney with the U.S. Department of Housing and Urban Development ("HUD").  Both the original and amended complaints contend that this informal letter creates *per se* liability each time a Home Service Contract company paid a real estate broker in connection with the sale of a Home Service Contract.  (*See, e.g.,* Doc. #6, ¶12).  After the operative amended complaint was filed, HUD, on June 24, 2010, released an interpretive rule regarding the sale of Home Service Contracts in connection with real estate transactions subject to RESPA.  In that interpretive letter, the General Counsel of HUD discussed the application of RESPA to compensation provided to a real estate broker or agent by a Home Warranty Company in connection with the sale of a Home Service Contract or warranty.  The General Counsel concluded that a Home Warranty Company cannot pay compensation to a real estate broker or agent for the referral of business to the Home Warranty Company in connection with a federally related mortgage loan, but that a fee can permissibly be paid by the Home Warranty Company if such fee represents payment for compensable services.  The General Counsel also indicated that a payment by a Home Warranty Company to a broker or agent for marketing services directed to particular home buyers or sellers generally would violate Section 8 of RESPA, but that a determination of whether the payment was for compensable services, and thus permissible, is to "be based on a review of the particular facts of each case."  While the parties to the Action are not in agreement as to the meaning, applicability, or force of the General Counsel's June 24, 2010 or November 23, 2010 interpretations, they do agree that the interpretations potentially impact both class certification and the merits issues in the Action.

On March 4, 2011, this court preliminarily approved a nationwide settlement class defined as follows:

> All buyers and sellers in any real estate transaction subject to the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.* ("RESPA") in connection with which an AHS Home Service Contract was purchased between May 27, 2008 and March 4, 2011 and as to which Home Service Contract AHS paid Broker Compensation.

(Doc. #38, Exh. 1A, "Notice of Class Action and Settlement").

This case has been vigorously contested. The parties have also undertaken significant discovery in this Action, including 30(b)(6) depositions of AHS personnel and the production of a substantial volume of documents. (Doc. #69 at 34). While there has not been case-dispositive motion practice, and the issue of class certification has not been litigated, the parties in the course of their settlement negotiations have fully analyzed these and other issues in the case. (Doc. #69 at 34). Throughout the course of the litigation, AHS has vigorously denied, and continues to deny, all liability with respect to any and all facts or claims alleged in the Action. All parties recognize that there exists substantial uncertainty as to the outcome of this case if it were to be litigated fully, and that a prompt resolution of Plaintiffs' claims is in the best interest of all parties.

**B.    The Parties' Settlement Negotiations**

On June 21, 2010, this court ordered the parties to mediate this case. (Doc. #26). The parties promptly selected Bernard Harwood as mediator and participated in various mediation sessions spanning about six months. On December 21, 2010 the parties submitted a Notice of Settlement of Class Action (Doc. #30). On January 20, 2011 the parties filed a Joint Motion in Support of Preliminary Approval of Proposed Settlement and Incorporated Memorandum in Support (Doc. #31). Upon study of the Motion for Preliminary Approval and draft settlement, the court held a status conference (*see* Docs. #32, 33). Thereafter, the parties were directed to file additional briefs addressing: (1) whether it would be appropriate

4

for the court to approve the language of Section 5.3 of the proposed settlement agreement which purports to adopt or incorporate the Department of Housing and Urban Development's ("HUD") interpretive rules issues with respect to the RESPA claims at issue in the case; (2) amendment of the proposed settlement to clearly delineate the time period applicable to potential Class Members and to provide for an address search firm to verify the addresses of potential Class Members; and (3) the issue of the fairness of Section 10.1 of the proposed settlement agreement to the extent the release provision applies to any claims for relief "insofar as the same arise from the payment of Broker Compensation in connection with Home Service Contracts purchased or sold during the Class Period, and/or practices during the Class Period as alleged in, or reasonably related to those alleged in, the Action." (Doc. #33).

The parties timely filed those briefs (*see* Docs. #34, 35, 36) and thereafter filed a Renewed Joint Motion for Preliminary Approval of Class Action Settlement (Doc. #37). After carefully reviewing all briefs and the amended Stipulation of Settlement, the court entered an Order Preliminarily Approving Settlement and Providing for Notice (Doc. #38). In that Order (Doc. #38), the court approved a form notice to be sent to Class Members and ordered that the notice be distributed under certain conditions and within certain deadlines. (Doc. #38 at ¶¶ 7-9 and Exh. 1-A, "Notice of Class Action and Settlement").

### C.     Notice

In order to provide effective notice to the class, AHS created a list of Notice Recipients including the names and last known addresses of the home seller and home buyer of each transaction included in the Settlement for whom AHS had such information. (Doc. #69, Exh. F). Specifically, the names and addresses of 427,550 home buyers or co-buyers and 322,047 home sellers or co-sellers were included in the initial list of Notice Recipients. (Doc. #69, Exh. F). AHS then provided the last known mailing addresses of the Notice Recipients to Experian Marketing Services, a third party vendor. (Doc. #69, Exh. A). Experian ran the last known mailing address of the Notice Recipients against the National Change of

Address system to ensure the most recent addresses for the Notice Recipients had been used.  (Doc. #69, Exh. A).  Experian also processed the mailing list to ensure that it included deliverable addresses and had no other errors.  (Doc. #69, Exh. A).  AHS mailed the Notice of Class Action and Settlement to 705,081 Notice Recipients on May 18, 2011 via first class mail.  Approximately 45,642 Notices were returned as undeliverable by the US Postal Service and could not be forwarded.  AHS made available on the settlement website a copy of the Class Notice, the Settlement, and a copy of the Court's preliminary approval order.  (Doc. #69 at 17).  AHS timely sent Notice to the Attorney General of the United States, as well as to the appropriate regulators for all of the states covered by the geographic scope of the Settlement.  (*See* Doc. #69 at 17).

**D.      Reaction to the Settlement from the Class**

In response to the Notice, AHS received a mere 191 exclusion requests, amounting to only a trace percentage of the class.  (Doc. #69 at 41).  At least 25 of those opt outs are excluding themselves for reasons unrelated to the Settlement – either they did not purchase the AHS warranty and thus were not entitled to participate as Class Members, or they are satisfied with AHS or for other reasons do not wish to participate in the case.  (Doc. #69 at 42).

**E.      The Fairness Hearing**

At the fairness hearing scheduled on August 17, 2011, the parties and sole intervenor/objector Michele A. Schuler, through her counsel, represented to the court that they desired additional time to work through the objections and perhaps come to a mutually agreeable resolution.  (Doc. #73).  The court granted that request but noted that even if a settlement was reached between AHS and the intervenor/objector, the court would nevertheless be required to consider the substance of the intervenor/objector's objections to protect the interests of the absent class members.  (Doc. #73).

On September 19, 2011 intervenor/objector Michele Schuler, plaintiffs Thomas S. Abney and Jennifer Abney, and AHS filed a Joint Status Report to Court (Doc. #74) informing the court that the objections to the proposed settlement had been mediated and that final drafts of settlement documents were being exchanged.  The court set the case for an additional fairness hearing on November 10, 2011 to explore the Settlement as improved by the Intervenor Settlement Agreement.

Proper notice of the hearing was provided to all parties and the Class Members.  At the hearing, all who appeared and wished to be heard were given an opportunity to present their positions and arguments.  There were no objectors to the Settlement as modified by the Intervenor Settlement Agreement.

## II.   Structure of the Settlement

Although the court has already given its preliminary approval here, it still must undertake a rigorous analysis to ensure that the parties' settlement is fair, adequate, and reasonable.  Rule 23(e)(2), Fed.R.Civ.P.  If finally approved, the Settlement as amended by the Intervenor Settlement Agreement provides for settlement compensation in the amount of (a) 77.54% of the actual amount paid by AHS as Broker Compensation with respect to the purchase of a particular Home Service Contract by a Qualifying Claimant, times (b) such Qualifying Claimant's Proportionate Share with respect to such particular Home Service Contract.  If the actual amount paid by AHS as Broker Compensation with respect to the purchase of a particular Home Service Contract by a Qualifying Claimant is unknown or cannot be determined without an unreasonable expenditure of time and/or resources, then Settlement Compensation shall mean (a) $52.50 times (b) such Qualifying Claimant's Proportionate Share with respect to such particular Home Service Contract.  In no case shall the amount of Settlement Compensation associated with any particular Home Service Contract exceed $69.78.

This Settlement will be administered on a claims-made basis, which is necessary because: (1) AHS neither gathers nor maintains in the ordinary course of business information to show who in fact paid for a given Home Service Contract purchased in connection with a real estate sale and (2) without making inquiry of Claimants in connection with their Proof of Claim Form, it is impossible to know whether their real estate transaction (and purchase of a Home Service Contract) is covered by RESPA. (Doc. #69 at 10-11). *See also Gintis v. Bouchard Transp. Co., Inc.*, 596 F.3d 64, 66 (1st Cir. 2010) (noting that in every class action settlement, every plaintiff must show specific entitlement to recovery). Claimants must establish through their Proof of Claim form that someone was affirmatively influenced in their selection of an AHS Home Service Contract as suggested by the language of RESPA and Regulation X. (Doc. #69 at 12).

The business practices described in Section 5.3 of the Stipulation are appropriate under Section 8 of RESPA and also under the guidance provided by HUD in its June 2010 and December 2010 interpretations. (Doc. #69 at 14). The business practices outlined in the Settlement make clear that AHS will not pay a Real Estate Professional for referring business to AHS. Instead, any payments to Real Estate Professionals will be for compensable services.

### III.   Analysis of the Fairness, Adequacy, and Reasonableness of the Proposed Settlement

"The court must be exacting and thorough in analyzing whether the settlement is in the best interests of class members." *Turner v. Murphy Oil USA, Inc*., 472 F.Supp.2d 830, 843 (E.D. La. 2007) (citing *Manual for Complex Litigation* (Fourth) § 21.61 (2004)). "The [c]ourt may not resolve contested issues of fact or law, but instead is concerned with the overall fairness, reasonableness, and adequacy of the proposed settlement as compared to the alternative of litigation." *Turner*, 472 F.Supp.2d at 843.

A.     **Appropriate and Effective Notice Was Given**

The court's Order Preliminarily Approving Settlement and Providing for Notice (Doc. #38) required the dissemination of a legal notice of the settlement to individual Class Members in a form approved by the court.  "According to Rule 23(e), the notice must be given 'in a reasonable manner.' ... 'There are no rigid rules to determine whether a settlement notice to class members satisfies constitutional and Rule 23(e) requirements... .'"  *Turner*, 472 F.Supp.2d at 839 (citing Fed.R.Civ.P. 23(e)(1)(B) and *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005), *cert. denied*, 544 U.S. 1044)). Here, only two objections with regard to notice were ever made in this action: (1) that the Settlement failed to inform absent class members that claims against real estate agents were also being released and (2) that the notice was not reasonably calculated to reach sellers even though sellers constitute the "vast majority" of the class.  (*See* Doc. #62 at 18-24).  All objections have been withdrawn in light of the Intervenor Settlement Agreement.  (*See* Docs. #74, 75, 76).  Nevertheless, the court addresses these objections in the interest of protecting the interests of absent Class Members.

The first notice objection was simply wrong – the Class Notice very clearly discloses that Real Estate Professionals are included in the definition of Released Parties.[3]  Moreover, the Class Notice mirrors the Stipulation verbatim which counsels a finding that the scope of the release is reasonable.  *See In re Nasdaw Market-Makers Litig.*, 187 F.R.D. 465, 482 (S.D. N.Y. 1998) ("[t]he fact that the scope of the

---

[3] The Notice provides, in relevant part, as follows:

"Released Parties" further includes anyone to whom AHS has paid, directly or indirectly, Broker Compensation during the Class Period.  "Broker Compensation" means any fee or other compensation paid by AHS to a Real Estate Professional that is (a) based on the marketing or sale of a particular Home Service Contract or (b) for direct marketing services by the Real Estate Professional or its Related Interests to consumers for a specified period of time, during which period of time a particular Home Service Contract was not issued to a customer of such Real Estate Professional or its Related Interests, but that is not (c) calculated based on the number of residential real estate listings or residential real estate sales a Real Estate Professional has in any given time period.

release has been fully disclosed in the class notice with opportunity for opting out strongly supports the scope of the releases."). Therefore, this objection was without merit.

The second notice objection was similarly incorrect. The Class Notice went to every person for whom AHS had an address involved in a real estate transaction covered by the Settlement. In every instance, AHS possessed the address of the property covered by the Home Warranty that was sold, which would have been in each case both the home buyer's address, as well as the seller's old address; when AHS had in its records a new address for the home seller, AHS used such address in compiling the Notice Recipient list. The Notice Recipient list included the names and addresses of 427,550 home buyers or co-buyers and 322,047 home sellers or co-sellers. (Morgan Decl., ¶ 3). This list of Notice Recipients was then submitted to Experian Marketing Services, a third party vendor, which ran the last known mailing address of the Notice Recipients against the National Change of Address Database to ensure it had the most recent addresses for the Notice Recipients. Therefore, this objection was without merit.

**B.     Class Certification Is Warranted**

The parties settled this action prior to certification. A class may be certified "solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue." *Woodward v. NOR-AM Chem. Co.*, 1996 WL 1063670 *14 (S.D. Ala. 1996) (citing *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 173-78 (5th Cir. 1979), *cert. denied*, 452 U.S. 905 (1981)).[4] In *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997), the Supreme Court held that because a settlement class action obviates a trial, the district judge deciding whether to certify a settlement class action "need not inquire whether the case, if tried, would present intractable management problems," under Rule

_____

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(*en banc*), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

23(b)(3)(D). However, "the settlement context demands undiluted, even heightened attention to unwarranted or overbroad class definitions." *Id*.

Federal Rule of Civil Procedure 23 governs the certification of class actions. District courts are required to conduct a "rigorous analysis" of that rule's requirements, even when presented with a request for settlement-only class certification. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

> The safeguards provided by Rule 23(a) and (b) class-qualifying criteria, we emphasize, are not impractical impediments – checks shorn of utility – in the settlement class context. First, the standards set for the protection of absent class members serve to inhibit appraisals of the chancellor's foot kind-class certifications dependent upon the court's gestalt judgment or overarching impression of the settlement's fairness.
>
> Second, if a fairness inquiry under Rule 23(e) controlled certification, eclipsing Rule 23(a) and (b), and permitting class designation despite the impossibility of litigation, both class counsel and court would be disarmed. Class counsel confined to settlement negotiations could not use the threat of litigation to press for a better offer, ... and the court would face a bargain proffered for its approval without benefit of adversarial investigation ....
>
> Federal courts, in any case, lack authority to substitute for Rule 23's certification criteria a standard never adopted – that if a settlement is "fair," then certification is proper....

*Id*. at 621-22.

### 1.   Analysis of the Rule 23(a) Factors

Regardless of whether a class is certified for settlement or for trial, the court must determine whether the prerequisites of Rule 23(a) are met: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). The proposed class must also meet the requirements of one of the three class types found in Rule 23(b). In this case, the parties

stipulated to certification of the Class under Rule 23(b)(3), on the basis that "the questions of law or fact common to the members of the class predominate" over individual issues of law or fact and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b).  Because the undersigned found that the Rule 23(a) and (b) standards were satisfied, the settlement class was preliminarily certified, and notice to putative members of the proposed class was required.  (*See* Doc. #38 and Exh. 1, Part VI.).

A summary of the court's findings of fact on these issues is warranted on final approval.  The numerosity element requires that the members of the class must be "so numerous that joinder of all members is impracticable."  Fed.R.Civ.P. 23(a)(1).  Here, Notice went out to approximately 800,000 buyers and sellers involved in real estate transactions subject to RESPA in connection with which an AHS Home Service Contract was purchased between May 27, 2008 and March 4, 2011, for class membership to be based on claims-made.  Therefore, the court concludes that the class is sufficiently numerous.  No objector or third party has called the numerosity factor into question.

The commonality requirement is satisfied when the claims of the prospective class present common questions of law or fact. *See Coleman v. Cannon Oil Co.*, 141 F.R.D. 516, 521 (M.D. Ala. 1992).  The court finds that the class allegations in this case involve common issues of fact and law arising out of a common nucleus of operative fact, *i.e.*, the fee paid by AHS for services provided by a broker in connection with the sale of AHS's Home Service Contracts.  (Doc. #38 at 2).  The parties agree (for purposes of certifying a settlement class) that this alleged nationwide pattern satisfies commonality, and no objector or third party has called that assertion into question.  Therefore, the court finds the commonality element is satisfied.

Typicality is satisfied where the named plaintiff's claims are sufficiently similar to those of the absent Class Members to conclude that the representative will protect the interests of the class and that there are no antagonistic interests between the representative and the proposed class. *See Coleman*, 141 F.R.D. at 522. Because AHS's alleged practices adversely affected Plaintiffs and the other proposed class members "in the same general fashion," the court finds, for purposes of this Settlement, that their claims are indeed typical of the claims of the entire class. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *see Dujanovic v. MortgageAmerica, Inc.*, 185 F.R.D. 660, 667 (N.D. Ala. 1999) (Putnam, J.) (finding that the typicality prerequisite was satisfied where the plaintiff alleged a harm that was caused by defendant's policies and practices). The only objection raised at one point against typicality (and adequacy of representation) was that of Schuler – that Plaintiffs lacked standing to pursue claims against Ebby Halliday Realtors. (*See* Doc. #62 at 5, 12-13) ("As Plaintiffs do not possess any claim against Ebby Halliday, their absence of such a claim is obviously not 'typical' of objector's claim against Ebby Halliday."). But that objection misses the mark. Given the nature of the claims against AHS (and potential claims against the brokers, compensation to whom was paid by AHS pursuant to similar contracts), Eleventh Circuit precedent would have allowed for joinder of other realtors in this action under RESPA, including Ebby Halliday, even without joinder of additional class representatives. *See Moore v. Comfed Sav. Bank*, 908 F.2d 834, 839 (11th Cir. 1990) (defendants had no dealings with named plaintiffs but had dealt with some members of the class could be joined under Rule 20, so long as the claims against them arose out of a series of transactions all involving the principal defendant). Apart from Rule 20 joinder, each transaction in this case involved AHS and one or more real estate brokers and/or agents. The complaint in this case comprehends each such transaction, contends that each involves an alleged kickback or referral fee, and seeks recovery under RESPA for each such transaction. The transaction that forms the

13

basis of Schuler's claim is plainly one about which the Abneys had standing to sue representatively. Therefore, the court finds that the typicality element is satisfied.

One objection was initially raised with respect to adequacy of representation – that the Abneys are not adequate class representatives for claims against real estate agents because they never attempted to pursue such claims and, yet, are releasing those claims in exchange for no contribution from real estate agents. (*See* Doc. #62 at 5-7). However this objection (when it was being raised) also missed the mark. The addition of real estate professionals to the case would have added nothing from the Class Members' perspective, as the full value of Class Members' RESPA claims may be recovered from AHS and RESPA does not allow for double recovery. "Courts are loathe to find representatives or their counsel inadequate based on tactical decisions to pursue certain claims and forego others, especially if the representatives and counsel are not 'pursuing relatively insignificant claims while jeopardizing the ability of Class Members to pursue far more substantial, meaningful claims." *Stanich v. Travelers Indem. Co.*, 259 F.R.D. 294, 308 (N.D. Ohio 2009). Moreover, "[a]dequate representation of a particular claim is established mainly by showing an alignment of interests between class members, not by proving vigorous pursuit of that claim." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106-107 (2d. Cir. 2005). Therefore, the court finds that the Abneys have adequately represented the class.

### 2.   Analysis of the Rule 23(b) Requirements

"To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the rule 23(a) prerequisites: Common questions must 'predominate over any questions affecting only individual members'; and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). In the settlement context of this case, there are no disparate questions undermining class cohesion. The Class

Members claim to have been harmed by a common course of conduct – Defendant's practice of paying a fee for services provided by a broker in connection with the sale of AHS's Home Service Contracts. Plaintiffs allege that the Class Members all suffered harms in the same manner making it more economical – if not financially for the parties, at least in terms of judicial resources – to settle the claims in one suit. *See Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir.1975), *cert. denied*, 429 U.S. 816 (1976). Therefore, the court finds the predominance and superiority elements are satisfied in this case. Additionally, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem Prods.*, 521 U.S. at 620. Accordingly, certification is appropriate under Rule 23(b)(3).

C.      **Other Objections to the Proposed Settlement**

Two final objections were made by the sole intervenor (but here since have been withdrawn) – (1) that the settlement is not fair, reasonable, or adequate as to non-party real estate agents because they are contributing nothing to the settlement in exchange for the release of such claims and because there is no record before the court to evaluate such claims; and (2) that the settlement is not fair, reasonable, or accurate because a substantial portion of those persons with valid RESPA claims against AHS – both sellers who reimbursed buyers as well as buyers who were reimbursed by sellers for the cost of a home warranty selected by the buyer – will not be entitled to any benefits under the proposed settlement. A "catch-22" in the settlement's approach to qualifying claims ensures that virtually no one will receive compensation. As noted earlier, these objections have been resolved by the Intervenor Settlement Agreement. This fact speaks volumes that the Settlement is fair, reasonable, and adequate. Nevertheless,

to protect the interests of the absent Class Members, the court considers the substance of the withdrawn objections.

As to the first objection, Schuler asserted that the real estate professionals in question are not minor, tag-along players but rather individuals who owed a fiduciary duty to the class member they were supposed to be representing.  (Doc. #62 at 15).  However, the law imposes no requirement that settlements only release parties to an action.  *See In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 118-119 (S.D. N.Y. 2010) ("Class action releases may include claims not presented in the complaint and even those which could not have been presented so long as the released conduct arises out of the identical factual predicate as the settled conduct.").  The decision not to include brokers as parties to the action was based upon unique barriers that could have barred recovery against them in this Action.  "It is far from clear that the realtors who disclosed to their principals that they were receiving a financial benefit from the home warranty transaction have, in fact, breached their fiduciary obligations to the principals."  (Doc. #68 at 6).  "It would be quite difficult to argue that it is consistent with fiduciary obligations for an agent to serve two antagonistic masters on opposite sides of a transaction, so long as there is disclosure and consent, and yet inconsistent with fiduciary obligations for the agent to receive an ancillary benefit from a third party, even though that benefit is disclosed to the principal in a signed agency agreement."  (Doc. #68 at 7).  Further, a claim for fiduciary breach of duty would be difficult, if not impossible to maintain, because individual liability and damages issues would abound.  (Doc. #68 at 8).  "A central issue that could not be decided on a class basis would be the particular circumstances of any disclosure of the kickback arrangement."  (Doc. #68 at 8).  That is, in some circumstances disclosure is made and consent is given at the time of the formation of the agency relationship; at other times, the agent may have never informed the principal of the "kickback arrangement."

Instead, the relevant consideration is not whether any particular non-party did or did not contribute to the settlement in the case, but whether the compensation proposed is reasonable under all of the circumstances.   Here, there is no question that the Settlement compensation is reasonable.   Before the Agreement was amended by the Intervenor Settlement Agreement, the monetary relief available to every qualifying settlement class member was 66% of the alleged referral fee.   The current Settlement Agreement as improved upon by the Intervenor Settlement Agreement provides for 77 ½% of the alleged referral fee.   Therefore, despite (and in addition to) the fact that this objection has been withdrawn, it was and is without merit.

The final withdrawn objection that was made by Michele Schuler was that the relief negotiated provided a "catch-22" situation.   As originally drafted, the Settlement required that the claimant actually "purchase" the warranty in question and swear under oath that AHS was "suggested" to claimant because of the broker's representations.   (Doc. #62 at 25-26).   But home sellers do not typically select the home warranty provider.   Rather the home buyer does.   The seller is "most often simply reimbursing the cost of a warranty that was selected by the buyer.   Thus, even though it would be absurd to ask a seller who did not select AHS why they selected AHS, the claims process as originally drafted required the correct answers "to precisely such absurd questions."   (Doc. #62 at 26).

This objection was remedied in full by the Settlement Agreement as modified by the Intervenor Settlement Agreement.   The influence questions have been removed from the Proof of Claim Form.   (Doc. #76, Exh. 1).   The Proof of Claim Form makes clear that if the HUD-1 does not accurately reflect the purchaser of the Home Warranty Contract, additional proof of purchase may be submitted with the claim form.   (Doc. #76, Exh. 1).   The Claims Administrator shall be notified that the HUD-1 is not the controlling document in the event that other evidence submitted by the Settlement Class Member in

connection with the Claim Form (such as the Settlement Class Member's residential real estate contract, canceled check, or other documentation) establishes that the Settlement Class Member was the purchaser of the AHS Home Service Contract.  (Doc. #76, Exh. 1).  Therefore, despite (and in addition to) the fact that this objection has been withdrawn, it was and is without merit.

The fairness, reasonableness, and adequacy factors of the Settlement are further examined below.

### D.     __Fairness of the Settlement Agreement__

"Before approving a class settlement that binds members of the class, the Court must conduct a fairness hearing at which the parties proposing the settlement must present evidence that the settlement is 'fair, reasonable, and adequate.'"  *Turner*, 472 F.Supp.2d at 839 (citing  Fed.R.Civ.P. 23(e)(1)(C); *Newby v. Enron Corp.*, 394 F.3d 296, 300-01 (5th Cir. 2004); *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982)).

Whether to approve a settlement in a class action lawsuit is a decision "left to the sound discretion of the trial court," and the court understands that its decision will not be overturned "absent a clear showing of abuse of that discretion." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir.1984). This makes the court's task of examining this settlement and ensuring its fairness, adequacy and reasonableness all the more critical.

Federal Rule of Civil Procedure 23(e) provides that "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs."  While the Rule does not provide standards for the court to employ in considering a motion for approval, those standards have often been articulated in various reported decisions.  When exercising its discretion, the court must consider the public and judicial policies that strongly favor the settlement of class action lawsuits. *In re U.S. Oil and Gas*

*Litig.*, 967 F.2d 489, 493 (11th Cir. 1992); *accord Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).

"[I]t has been repeatedly recognized that settlements are 'highly favored in the law and will be upheld whenever possible because they are means of amicably resolving doubts and preventing lawsuits.'" *Bennett v. Behring Corp.*, 96 F.R.D. 343, 348 (S.D. Fla. 1982) (quoting *Miller v. Republic Nat. Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir.1977) *aff'd*, 737 F.2d 982 (11th Cir. 1984)).  This is the case "particularly in an area where voluntary compliance by the parties over an extended period will contribute significantly toward ultimate achievement of statutory goals." *Patterson v. Newspaper & Mail Delivers' Union*, 514 F.2d 767, 771 (2d Cir. 1975) (citations omitted).  Settlements in class action cases are also favored because they "conserve judicial resources by avoiding the expense of a complicated and protracted litigation process...." *In re Motorsports Merch. Antitrust Litig.*, 112 F.Supp.2d 1329, 1333 (N.D. Ga. 2000).

The Eleventh Circuit has instructed that, in examining the fairness, adequacy, and reasonableness of a settlement, a district court should examine several factors, including: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved."  *In re CP Ships Ltd. Securities Litigation*, 578 F.3d 1306, 1317-18 (11th Cir. 2009) (quoting *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir.1984)).  "Thus, the issues that bear upon whether or not to grant final approval here are: a) whether the settlement was procured by collusion among the parties or was the result of arms-length and informed bargaining; and b) whether the proposed final settlement is fair, adequate and reasonable, applying the six *Bennett* factors."  *Lipuma v. American Express Co.*, 406 F.Supp.2d 1298, 1315 (S.D. Fla. 2005).  The court will address each of these issues in turn.

19

### 1.       This Settlement is the Product of Informed, Arms-Length Negotiations

The court has a duty to determine the possible existence of fraud or collusion.  In assessing this

factor, the words of Judge Lynwood Smith come to mind:

> There is not a scintilla of evidence suggesting that the proposed settlement
> is the product of fraud, collusion, or otherwise improper conduct.  Instead,
> the record demonstrates that the settlement was negotiated by capable,
> experienced counsel, in good faith, and at arms' length, following an
> extensive, lengthy, and difficult process supervised by an experienced
> mediator.  Substantial discovery had been completed in connection with the
> class certification motion, enabling the parties to fairly assess the risks and
> rewards of further litigation. ...  The parties have represented to the court
> that the class action settlement was reached through arms' length
> negotiations over the course of several months, and that it was negotiated
> in an adversarial manner following substantial factual investigation,
> extensive legal analysis, expert investigation, and professional mediation.
> Accordingly, the court finds no evidence of fraud or collusion in the
> settlement negotiations, or the resulting proposed settlement.

*Carnegie v. Mutual Savings Life Ins. Co.*, 2004 WL 3715446, at *18 (N.D. Ala. 2004).

Plaintiffs filed this class action in May 2009 claiming that a fee paid by AHS for services provided

by the broker in connection with the sale of AHS's Home Service Contracts is an impermissible referral

fee or kickback that is unlawful under § 8(a) of RESPA, 12 U.S.C. § 2607(a).  (Doc. # 1).  After a year of

discovery and motion practice, the parties began protracted and contentious negotiations that were

supervised by a well-qualified mediator and  ultimately produced this Settlement.  (*See, e.g.*, Docs. #26,

29, 30, 37).

On May 5, 2010, the court ordered the parties to engage in mediation.  (Doc. #26).  The parties

agreed on Bernard Harwood[5] as mediator and engaged in multiple joint sessions with Mr. Harwood,

---

[5] Bernard Harwood is not only a retired justice of the Supreme Court of Alabama, but also
a top attorney in this State and the court's bar.  Likewise, he is a seasoned third party neutral.

numerous individual settlement discussions with Mr. Harwood, and numerous in-person and telephonic settlement discussions between counsel.  (Doc. #69 at 7).  The parties exchanged numerous drafts of proposed settlement agreements, class notices, claim forms and the like and have invested extensive amounts of time in the negotiation of particular provisions of and exhibits to a proposed settlement agreement.  The parties' negotiations were bifurcated, such that an agreement on the substantive terms of the settlement would be reached before the issue of fees was resolved by the parties.  (Doc. #69 at 27-28; Stipulation, ¶ 8.2).

An initial settlement of this matter was reached in December 2010.  (Doc. #30).  On January 20, 2011 the parties filed a Joint Motion in Support of Preliminary Approval of Proposed Settlement and Incorporated Memorandum in Support (Doc. #31).  The court held a status conference on February 3, 2011, and thereafter required the parties to file additional briefs concerning certain sections of the proposed settlement.  Specifically, the court requested that the parties: (1) address whether it would be appropriate for the court to approve the language of Section 5.3 of the proposed settlement agreement which purports to adopt or incorporate the Department of Housing and Urban Development's ("HUD") interpretive rules issued with respect to the RESPA claims at issue in this action; (2) amend the proposed Notice of Class Action and Settlement to clearly delineate the time period applicable to potential Class Members and to provide for an address search firm to verify the addresses of potential Class Members; and (3) address the issue of the fairness of Section 10.1 of the proposed settlement agreement to the extent the release provision applies to any claims for relief "insofar as the same arise from the payment of Broker Compensation in connection with Home Service Contracts purchased or sold during the Class Period, and/or related to AHS's policies, procedures, contracts with Real Estate Professionals, and/or practices during the Class Period as alleged in, or reasonably related to those alleged in, the Action."  The parties

21

complied with the court's requests, and the court was completely satisfied that the Settlement should be granted preliminary approval.

In preliminarily approving the settlement, the court found that:

> The Settlement appears to be fair, reasonable, and adequate with respect to the class. The Settlement also appears to be free of collusion to the detriment of Class Members, and its terms are within the range of apparent reasonableness, fairness, and adequacy.

(Doc. #38 at 4-5).

Further negotiations in this case, resulting from the intervention of Michele Schuler, served to improve on what the court preliminarily found to be a fair, reasonable, and adequate settlement. As explained in detail above, the Settlement Agreement as modified by the Intervenor Settlement Agreement specifically provides for notification of the claims administrator that the HUD-1 is not the controlling document in the event some other evidence is produced establishing the purchaser of the Home Service Contract. The settlement compensation increased. In light of all this, the court does not hesitate in finding that this Settlement is the product of informed, arms-length negotiations.

## 2. The *Bennett* Factors

### a. The Likelihood of Success at Trial

"The likelihood of success on the merits is weighed against the amount and form of relief contained in the settlement." *Lipuma v. American Express Co.*, 406 F.Supp.2d 1298, 1319 (S.D. Fla. 2005). In evaluating this factor, the court should not reach any ultimate conclusions with respect to issues of fact or law involved in the case. "The very uncertainty of outcome in litigation, as well as the avoidance of wasteful litigation and expense, lay behind the Congressional infusion of a power to compromise.... [Settlements] could hardly be achieved if the test on hearing for approval mean establishing success or failure to a certainty." *Knight v. Alabama*, 469 F.Supp.2d 1016, 1033 (N.D. Ala.

22

2006) (quoting *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981)).  Rather, these factors ask whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial."  *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d at 322.  Courts should rely on the assessments of these risks provided by counsel involved in the action, and be hesitant to substitute its own judgment regarding such risks and uncertainties.  *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 315 (N.D. Ga. 1993).

The court has not previously weighed in on the merits, risks, or likelihood of success at trial.  However, the court is familiar with the facts and law of this case, the legal standards that apply to it, and has been very involved in supervising this litigation.  Given this familiarity, the court believes that good cause exists for the parties to resolve their disputes.

To be sure, risks are inherent in all litigation, particularly in high stakes lawsuits. This case is no exception.  Class Members face not only hurdles on the merits of their claims, but also as to class certification.  The issue of whether broker compensation was, on one hand, an impermissible referral fee or permissible compensation for services, could be argued to be an individual question.  One interpretive letter from HUD suggests that payment of fees to real estate brokers by home warranty companies is not a *per se* violation of RESPA, but rather is to be analyzed on a case by case basis.  (Doc. #69 at 29).  The factual circumstances of each Class Members' case could result in hundreds of thousands of mini-trials.  Before the action could be presented to the jury, the court would likely be required to resolve several complex legal issues, including whether: (a) compensable services were in fact  provided for which the real estate professionals were paid; (b) the amounts paid to the real estate professionals were reasonable; (c) any given real estate transaction involved a federally-related loan and was otherwise under RESPA's coverage; and (d) there was affirmative influence upon the purchaser or a Home Service Contract in any

given real estate transaction.  (Doc. #69 at 32).  *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d at 318 (settlement was favored where the trial of the class action would be a long, arduous process requiring great expenditure of time and money on behalf of both parties and the court).

The court also notes that although the Rule 23(a) factors have been met, there are still substantial hurdles that Plaintiffs would have to negotiate in order to achieve an adversarial Rule 23 certification. Among the difficult obstacles confronting them would be the questions of whether certification of the class would be appropriate in light of the Rule 23(b) factors related to manageability.  *See e.g.*, *Knight*, 469 F.Supp.2d at 1033.

Moreover, conducting a class certification hearing, evaluating dispositive motions, and trying this case would not only involve uncertain outcomes at each one of those steps, but also would require a lengthy time commitment from the court and counsel.  And, to say the least, a hearing or trial would not only be lengthy, but logistically complicated and tremendously expensive for all parties. For these reasons, the court concludes that the risks faced by the parties and the difficulty in managing a trial or hearing counsel in favor of accepting the proposed Settlement.

> **b.     The Range of Possible Recovery and The Point on or Below the Range of Possible Recovery at Which a Settlement Is Fair, Adequate, and Reasonable**

District courts often consider the next two factors together because they are related.  *See, e.g., Knight*, 469 F.Supp.2d at 1033; *Lipuma*, 406 F.Supp.2d at 1322; *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 541 (S.D. Fla.1988).  Analysis of these factors requires the court to compare the settlement terms "'with the likely rewards the class would have received following a successful trial of the case.'"  *Knight*, 469 F.Supp.2d at 1033 (quoting *Cotton*, 559 F.2d at 1330). "When making this comparison, the Court should keep in mind that 'compromise is the essence of a settlement,' and 'should

not make a proponent of a proposed settlement "justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes."'" *Knight*, 469 F.Supp.2d at 1033 (citing *Cotton*, 559 F.2d at 1330 (quoting *Milstein v. Werner*, 57 F.R.D. 515, 524-25 (S.D. N.Y. 1972))). Here, as in most class actions, it is not only monetary relief that is difficult to quantify, but the range of possible recovery "'spans from a finding of non-liability through varying levels of injunctive relief.'" *Assoc. for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 468 (S.D. Fla. 2002).

The court finds that the proposed relief contained in the proposed Settlement is reasonable and is within the range of possible remedies permitted by law. Under the Settlement as improved upon by the Intervenor Settlement Agreement, qualifying claimants are entitled to 77 ½% of the amount o f the referral fee paid to the brokers. Relief at this percentage range represents a recovery well above that found to be fair, reasonable, and adequate in other class actions. *See Lazy Oil Co. v. Wotco Corp.*, 95 F.Supp.2d 290, 338 (W.D. Pa. 1997), *aff'd*, 166 F.3d 581 (3d. Cir. 1999). The fact is that it is neither required nor possible for a court to determine that the settlement is the fairest possible resolution of the claims of every individual class member; rather, the settlement taken as a whole must be fair, adequate, and reasonable. *See Shy v. Navistar Intern., Corp.*, 1993 WL 1318607 at *2 (S.D. Ohio May 27, 1993). The court, therefore, finds that the proposed relief is fair, adequate, and reasonable as compared to the range of possible recovery in this action.

### c.    The Complexity, Expense and Duration of Litigation

This inquiry overlaps in some respects the first *Bennett* factor – likelihood of success on the merits. In assessing this factor, "[t]he Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the

future, after protracted and expensive litigation. In this respect, '[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush.'" *Lipuma*, 406 F.Supp.2d at 1323 (quoting *In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D. La. 1993)). "'Complex litigation ... "can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive."'" *Lipuma*, 406 F.Supp.2d at 1323-24 (quoting *Woodward v. NOR-AM Chem. Co.*, 1996 WL 1063670 *21 (S.D. Ala. 1996) (*quoting In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir.1992))).

As previously discussed, this is a complex case, which if litigated would have been expensive and time consuming.  Further, to the extent that there would be a need to litigate individual damages claims, and to be sure here there would be that necessity, that process could take many more years to resolve, and would greatly increase the expense as well as the duration of this litigation.  Therefore, this factor counsels in favor of approving the proposed Settlement.

### d.    The Substance and Amount of Opposition to the Settlement

In assessing whether a proposed settlement is fair, adequate, and reasonable, the court must "examine the settlement in light of the objections raised." *Cotton*, 559 F.2d at 1331. "In assessing the fairness of a proposed compromise, the number of objectors is a factor to be considered but is not controlling." *Id*.  "Thus, a low percentage of objections points to the reasonableness of a proposed settlement and supports its approval."  *Lipuma*, 406 F.Supp.2d at 1324 (citing *Bennett*, 737 F.2d at 986).

Only one hundred and ninety-one (191) members of a class numbering in the hundreds of thousands elected to exclude themselves in this case, which amounts to a trace percentage of the class. (Doc. #69 at 41).  And here, only one Notice recipient objected to the Settlement at all, and those objections have been resolved. *See Wyatt By and Through Rawlins v. Horsley*, 793 F. Supp. 1053, 1056

26

(M.D. Ala. 1991) ("a court may properly interpret the absence of objections from a majority of the plaintiff class as indicating support for the proposed modification or settlement").  This is because, according to AHS, the proposed benefit provides significant and material benefits to the class.  (Doc. #69 at 3). The small number of opt-outs and objectors, along with the absence of any objections that have merit, militates in favor of approval of the Settlement.

e.      **The Stage of Proceedings at Which the Settlement Was Achieved**

The purpose of this inquiry is to ensure that the parties obtained an adequate appreciation of the merits of the case before negotiating the settlement.  *In re Prudential Ins. Co. of Am. Sales Practices Litigation*, 148 F.3d at 319.  But there is no precise yardstick to measure the amount of litigation that the parties should conduct before settling.  *See In re Rio Hair Naturalizer Prods. Liab. Litig.*, 1996 WL 780512 at *13 (E.D. Mich. 1996).  Instead, courts should focus on whether the parties engaged in sufficient discovery and investigation to afford them an adequate appreciation of the merits of the case such that they are not groping in the darkness when negotiating a settlement.  *See In re Prudential*, 148 F.3d at 319 and *Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977).

Here, as previously discussed, the parties have undertaken significant discovery in this action, including 30(b)(6) depositions of AHS personnel and the production of a substantial volume of documents.  (Doc. #69 at 5, 34).  The parties in the course of their settlement negotiations have fully analyzed the issues of certification and potential case-dispositive motion practice in this case.  (Doc. #69 at 34).  The parties also engaged in motion practice concerning electronically stored information.  (Doc. #69 at 8-9).  Perhaps most importantly, the parties improved upon what the court already preliminarily considered to be a fair, adequate, and reasonable settlement when they modified the Settlement Agreement to incorporate concerns voiced by the sole intervenor/objector in the case.

Given the circumstances described above, the court has no hesitation in finding that the parties and their counsel have sufficiently developed the facts and gained sufficient understanding of the merits of the case prior to entering into the proposed Settlement.  Thus, this factor also counsels in favor of approving the proposed Settlement.

## IV.   Conclusion

Based on the foregoing analysis, the court will enter a separate order which:

1.     Appoints Thomas S. Abney and Jennifer Abney as Class Representatives;

2.     Appoints D. Frank Davis, John E. Norris, and the firm of Davis & Norris LLP as Class Counsel;

3.     Appoints Garden City Group, Inc. as Claims Administrator to consider claims for Settlement Compensation in accordance with the terms of this Order and the Stipulation of Settlement as modified by the Intervenor Settlement Agreement;

4.     Approves the proposed Settlement (attached as Exhibit 1 to the Order Preliminarily Approving Settlement and Providing for Notice (Doc. #38)) as modified by the Intervenor Settlement Agreement (attached as Exhibit 1 to Document 76), and finds that the Settlement is fair, adequate and reasonable, and not the product of collusion among the parties;

5.     Finds that the Named Plaintiffs and each of the Class Members shall be deemed to have, and by operation of this Final Judgment shall have, fully, finally and forever released the Released Claims in accordance with the terms of the Agreement;

6.     Enjoins the Named Plaintiffs, all Class Members, their counsel and anyone claiming through or for the benefit of any of them, from commencing, prosecuting, instituting, continuing, or in any way participating in the commencement or prosecution of any Suit asserting any of the Released

Claims against the Released Parties, either directly, representatively, or in any other capacity. Furthermore, all Class Members who failed to file a timely and valid objection to the Agreement will be deemed to have waived and forfeited any such objections and will be bound by all terms of the Agreement, including the Releases and the Final Judgment and Order.;

7.     Orders that this action shall be dismissed with prejudice;

8.     Finds that except as expressly provided in the Settlement, each of the parties, including each Class Member, shall bear his/her/its own costs, fees and expenses; and

9.     Retains jurisdiction to enforce the terms of the Settlement Agreement as modified by the Intervenor Settlement Agreement, and reserves ruling on the issues of attorney's fees and incentive awards.

**DONE and ORDERED this ____8th_____ day of December, 2011.**

_____

**R. DAVID PROCTOR**
**UNITED STATES DISTRICT JUDGE**