IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| THOMAS S. ABNEY and JENNIFER L. ABNEY, on their own behalf and on behalf of all others similarly situated, } } } } | |
| Plaintiffs, } } | |
| v. } } | Case No.: 2:09-cv-1018-RDP |
| AMERICAN HOME SHIELD CORPORATION, } } } } | |
| Defendant. } | |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on the Petition for Incentive Payment (Doc. #57) filed by Plaintiffs Thomas and Jennifer Abney on May 27, 2011. The Petition (Doc. #57) was filed along with the Joint Declaration of the Abneys (Doc. #58). No objections have been made to the Petition for Incentive Payment (Doc. #57).

**I.     Procedural History**

On March 4, 2011, this court preliminarily approved a nationwide settlement class defined as follows:

> All buyers and sellers in any real estate transaction subject to the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.* ("RESPA") in connection with which an AHS Home Service Contract was purchased between May 27, 2008 and March 4, 2011 and as to which Home Service Contract AHS paid Broker Compensation.

(Doc. #38, Exh. 1A, "Notice of Class Action and Settlement").[1] The structure of the Settlement and benefits provided to the Class are described in detail at Section II of the court's Final Judgment

---

[1] This Final Judgment incorporates by reference the definitions in the Settlement, and all applicable terms used herein shall have the same meaning as set forth in the Settlement.

Granting Final Approval of the Class Action Settlement Agreement Between the Class and Defendant American Home Shield Corporation (Doc. #80).  Notably, the Settlement is not dependent on any particular incentive awards.  The Abneys fully understand that the court could approve the Settlement yet refuse an incentive award, despite the fact that AHS has agreed not to object to the requested incentive payment.  (*See* Doc. #57 at 2; *see also* Doc. #57, Exh. A, ¶ 11).

In the Preliminary Approval Order (Doc. #38), the court approved a form notice to be sent to Class Members and ordered that the notice be distributed under certain conditions and within certain deadlines. (Doc. #38 at ¶¶ 7-9 and Exh. 1-A, "Notice of Class Action and Settlement").  AHS created a list of Notice Recipients including the names and last known addresses of the home seller and home buyer of each transaction included in the Settlement for whom AHS had such information. (Doc. #69, Exh. F).  Specifically, the names and addresses of 427,550 home buyers or co-buyers and 322,047 home sellers or co-sellers were included in the initial list of Notice Recipients.  (Doc. #69, Exh. F). AHS then provided the last known mailing addresses of the Notice Recipients to Experian Marketing Services, a third party vendor.  (Doc. #69, Exh. A).  Experian ran the last known mailing address of the Notice Recipients against the National Change of Address system to ensure the most recent addresses for the Notice Recipients had been used.  (Doc. #69, Exh. A).  Experian also processed the mailing list to ensure that it included deliverable addresses and had no other errors. (Doc. #69, Exh. A).  AHS mailed the Notice of Class Action and Settlement to 705,081 Notice Recipients on May 18, 2011 via first class mail.  Approximately 45,642 Notices were returned as undeliverable by the US Postal Service and could not be forwarded.  AHS also made available on the settlement website a copy of the Class Notice, the Settlement, and a copy of the Court's preliminary approval order.  (Doc. #69 at 17).  AHS timely sent Notice to the Attorney General of the United States, as well as to the

appropriate regulators for all of the states covered by the geographic scope of the Settlement. (*See* Doc. #69 at 17).

In response to the Notice, AHS received a mere 191 exclusion requests, amounting to only a trace percentage of the class. (Doc. #69 at 41). At least 25 of those opt outs are excluding themselves for reasons unrelated to the Settlement – either they did not purchase the AHS warranty and thus were not entitled to participate as Class Members, or they are satisfied with AHS or for other reasons do not wish to participate in the case. (Doc. #69 at 42).

The court scheduled two fairness hearings at which all intervenors, objectors, and parties who appeared and wished to be heard from were given an opportunity to present their positions and arguments. No objectors were present; no one objected to the Petition for Incentive Award.

## II.  Discussion on Incentive Payments and Compensation to the Abneys

The Petition for Incentive Award proposes that Thomas and Jennifer Abney each receive a $5,000 incentive payment for their time and effort serving as class representatives in this case.

Incentive payments to named class representatives are fairly customary. These payments are intended to recognize the time and efforts the Abneys spent on behalf of the Class Members. By prosecuting this action as a class action, they significantly delayed resolution of their own claims. (Doc. #58, ¶¶ 4-5). They spent many hours meeting with Class Counsel and participating in the mediation process. (Doc. #58, ¶ 10). They rejected offers that would have compensated them at the expense of the class. (Doc. #58, ¶ 10).

"Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca-Cola Company*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (internal quotations and citations omitted)

(approving service awards of $300,000 to each named plaintiff in recognition of the services they provided to the class by responding to discovery, participating in the mediation process, and taking the risk of stepping forward on behalf of the class.). Courts have found it appropriate to specially reward named class representatives for the benefits they have conferred on the class in greater amounts than those sought here. *See Allapattah Servs, Inc. v. Exxon Corp.*, 454 F.Supp.2d 1185, 1218-19 (S.D. Fla. 2006) (collecting cases in which courts approved class representative incentive awards ranging between $1,500 and $25,000); *Pinto*, 513 F.Supp.2d at 1344 (approving $7,500 awards to three representative plaintiffs); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250-51 (S.D. Ohio 1991) ($50,000 to each of 6 class representatives, for an aggregate award of $300,000); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (two incentive awards of $55,000, and three incentive awards of $35,000); *Bogosian v. Gulf Oil Corp.*, 621 F.Supp. 27, 33 (E.D. Pa.1985) (incentive awards of $20,000 to each of two plaintiffs).

Any appearance of unfairness which arguably might arise because of the disproportionate distribution to the Abneys in the form of these incentive payments is dispelled in this case because these payments "are rationally based on legitimate considerations." *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1148 (11th Cir. 1983). The incentive payments proposed in this case are not shrouded in a "cloud of collusion." *See Holmes*, 706 F.2d at 1148. The Abney's actions as Class Representatives (1) protected the interests of class members and others; (2) resulted in substantial benefit to Class Members; (3) and required significant time and effort from the Abneys. *See Carnegie v. Mutual Sav. Life Ins. Co.*, 2004 WL 3715446, No. Civ. A CV-99S3292NE at * 24 (N.D. Ala. Nov. 23, 2004) (citing *Spicer v. Chicago Board Options Exchange, Inc.*, 844 F.Supp. 1226, 1266 (N.D. Ill. 1993) (setting forth "legitimate considerations" which dispel a "cloud of collusion"). The court also

finds it significant in this case that these payments were not discussed until after a Settlement was reached, and the Settlement is in no way conditioned upon their payment.

In light of the work and service the Abneys performed on behalf of Class Members, the risks they undertook, and their response to the Settlement, the requested incentive payments of $5,000 each are reasonable, appropriate and are due to be approved.

### III.   Conclusion

For the foregoing reasons, the Petition for Incentive Payment (Doc. # 57) is **GRANTED**.

**DONE and ORDERED this     8th       day of December, 2011.**

                                                     _____
                                                     **R. DAVID PROCTOR**
                                                     **UNITED STATES DISTRICT JUDGE**