IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| THOMAS S. ABNEY and JENNIFER L. ABNEY, on behalf of themselves and all others similarly situated,  }<br>  }<br>  }<br>  }<br>Plaintiffs, }<br>  }<br>v.  }<br>  }<br>AMERICAN HOME SHIELD CORPORATION, }<br>  }<br>  }<br>Defendant.  } | Case No.: 2:09-CV-1018-RDP |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on Class Counsels' Motion for Award of Attorneys' Fees (Doc. #78) filed November 22, 2011. Declarations from John E. Norris, Jay E. Tidwell, and Peter Burke were filed in support of the Motion. (Doc. #79). No objections have been made regarding the requested attorneys' fees.

**I.    Procedural History**

On March 4, 2011, this court preliminarily approved a nationwide settlement class defined as follows:

> All buyers and sellers in any real estate transaction subject to the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.* ("RESPA") in connection with which an AHS Home Service Contract was purchased between May 27, 2008 and March 4, 2011 and as to which Home Service Contract AHS paid Broker Compensation.

(Doc. #38, Exh. 1A, "Notice of Class Action and Settlement").[1] The structure of the Settlement and benefits provided to the Class are described in detail at Section II of the court's Final Judgment

---

[1] This Final Judgment incorporates by reference the definitions in the Settlement, and all applicable terms used herein shall have the same meaning as set forth in the Settlement.

Granting Final Approval of the Class Action Settlement Agreement Between the Class and Defendant American Home Shield Corporation (Doc. #80). Notably, the Settlement is not dependent on any particular attorneys' fees. Rather, the issue of attorneys' fees was negotiated later to be capped at $1,005,000. (*See* Doc. #79 at 1-2).

In the Preliminary Approval Order (Doc. #38), the court approved a form notice to be sent to Class Members and ordered that the notice be distributed under certain conditions and within certain deadlines. (Doc. #38 at ¶¶ 7-9 and Exh. 1-A, "Notice of Class Action and Settlement"). AHS created a list of Notice Recipients including the names and last known addresses of the home seller and home buyer of each transaction included in the Settlement for whom AHS had such information. (Doc. #69, Exh. F). Specifically, the names and addresses of 427,550 home buyers or co-buyers and 322,047 home sellers or co-sellers were included in the initial list of Notice Recipients. (Doc. #69, Exh. F). AHS then provided the last known mailing addresses of the Notice Recipients to Experian Marketing Services, a third party vendor. (Doc. #69, Exh. A). Experian ran the last known mailing address of the Notice Recipients against the National Change of Address system to ensure the most recent addresses for the Notice Recipients had been used. (Doc. #69, Exh. A). Experian also processed the mailing list to ensure that it included deliverable addresses and had no other errors. (Doc. #69, Exh. A). AHS mailed the Notice of Class Action and Settlement to 705,081 Notice Recipients on May 18, 2011 via first class mail. Approximately 45,642 Notices were returned as undeliverable by the US Postal Service and could not be forwarded. AHS made available on the settlement website a copy of the Class Notice, the Settlement, and a copy of the Court's preliminary approval order. (Doc. #69 at 17). AHS timely sent Notice to the Attorney General of the United States, as well as to the appropriate regulators for all of the states covered by the geographic scope of the Settlement. (*See* Doc. #69 at 17).

In response to the Notice, AHS received a mere 191 exclusion requests, amounting to only a trace percentage of the class. (Doc. #69 at 41). At least 25 of those opt outs are excluding themselves for reasons unrelated to the Settlement – either they did not purchase the AHS warranty and thus were not entitled to participate as Class Members, or they are satisfied with AHS or for other reasons do not wish to participate in the case. (Doc. #69 at 42).

The court scheduled two fairness hearings at which all intervenors, objectors, and parties who appeared and wished to be heard from were given an opportunity to present their positions and arguments. No objectors were present; no one objected to the capped attorneys' fees.

## II. Discussion Regarding the Attorney Fee Award

This case was brought pursuant to Section 8(d) of RESPA, 27 U.S.C. § 2607(d), which authorizes private suits for Section 8 of RESPA, including the recovery of treble damages and attorneys' fees and expenses. Section 8(d)(5) states: "In any private action brought pursuant to this subsection, the court may award the prevailing party the court costs of the action together with reasonable attorneys' fees." 27 U.S.C. § 2607(d)(5). In statutory attorneys' fees cases, the award is governed by twelve factors as set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir.1974). Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 717-19. The court addresses each of the factors below.

3

### 1.     The time and labor required

"Although the hours claimed or spent on a case should not be the sole basis for determining a fee, . . . they are a necessary ingredient to be considered." *Id.* at 717. This factor requires the court to examine the hours actually expended on the case, multiplied by the reasonable hourly rate for attorneys with similar skill and experience practicing in the same area. This litigation began in May 2009. Class Counsel have expended 2,442.7 hours in the course of this litigation. Those hours have been multiplied by reasonable hourly rates. Multiplying the rates by the hours expended produces a figure of $1,073,549. The capped amount requested falls below the calculated fees to date. This factor weighs in favor of awarding the fees as capped by agreement.

### 2.     The novelty and difficulty of the questions

"Cases of first impression generally require more time and effort on the attorney's part." *Id.* at 717. This case involves an uncertain question of the interpretation of Section 8(a) of RESPA. There is no definitive court decision resolving the uncertainty as neither the Supreme Court nor the Eleventh Circuit have spoken on the issue. This factor certainly weighs in favor of approval of the fees as capped by agreement.

### 3.     The skill requisite to perform the legal service properly

This is complex class action litigation against a large national corporation involving a question of law about which reasonable lawyers could differ. The skill necessary to litigate in such circumstances is high. This factor weighs in favor of approval of the fees as capped by agreement.

### 4. The preclusion of other employment by the attorney due to acceptance of the case

"This guideline involves the dual consideration of other available business which is foreclosed because of conflicts of interest which occur from the representation, and the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes." *Id.* at 718. Class Counsel's firm is a small law firm. They have been required to increase their staffing specifically to handle inquiries since the Class Notice issued in this matter. Trip Watson and Matt Phelan were hired solely to assist in responding to class member inquiries. (*See* Doc. #79 at 6). Between May 19, 2011 and late November 2011, Davis & Norris received approximately 2,202 telephone calls related to the Abney Class Settlement. (*See* Doc. #79 at 9). They received 2,274 emails. (*See* Doc. #79 at 9). With the exception of a small percentage of calls, faxes, and e-mails that required no response, every phone call was returned, every e-mail replied to, and every fax replied to. (*See* Doc. #79 at 9).

Class Counsel's involvement in this matter has necessarily limited the time and resources that they can devote to other matters over the period of this litigation (and that limitation will no doubt continue and expand after the postcard goes out opening the claims period). This factor weighs in favor of approval of the fees as capped by agreement.

### 5. The customary fee

The rates charged by the attorneys in this case are well within the customary fees charged for comparable service. D. Frank Davis and John E. Norris, with thirty-nine and twenty years, respectively, of experience practicing law (*see* Doc. #79 at 3-6), and extensive experience in complex and class action litigation throughout the country, charge within the range set forth in the National Law

Journal's 2010 billing survey of large firms nationwide. (*See* Doc. #79, Exh. 1, 2010 NLJ Billing Survey)  Therefore, this factor weighs in favor of approval of the fees as capped by agreement.

### 6. Whether the fee is fixed or contingent

"The fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fees expectations when he accepted the case." *Johnson*, 488 F.2d at 718. Counsel are handling this case on a contingent basis and have demonstrated that they have already expended more time than they will be compensated for in this case. (*See* Doc. #79 at 2).  Therefore, this factor weighs in favor of approval of the fees as capped by agreement.

### 7. Time limitations imposed by the client or the circumstances

"Priority work that delays the lawyer's other legal work is entitled to some premium. This factor is particularly important when new counsel is called in to prosecute the appeal or handle other matters at a late stage in the proceedings." *Johnson*, 488 F.2d at 718.  This factor is neutral at best here.

### 8. The amount involved and the results obtained

As negotiated, the Settlement in this case entitles the 500,000 some-odd individuals in the class to apply for and receive 77.54% of the kickback paid by AHS at an average of just over $52. (*See* Doc. #79 at 13-14).  This represents a potential recovery of $26 million. (*See* Doc. #79 at 13-14). Considering the legal uncertainty attending Plaintiffs' legal theory under RESPA, this factor weighs in favor of approval of the fees as capped by agreement.

### 9. The experience, reputation, and ability of the attorneys

The court is familiar with the experience, reputation, and ability of Class Counsel, as well as AHS's counsel. This case has, at all stages, been handled on both sides by very experienced and

talented lawyers whose reputations for effective handling of complex litigation are well known throughout Alabama.  This factor weighs in favor of awarding the lodestar.

### 10.     The "undesirability" of the case

This factor is neutral, supporting neither an enhancement nor reduction of the lodestar.

### 11.     The nature and length of the professional relationship with the client

Nothing has been brought to the court's attention to indicate that Class Counsel were representing long-term clients.  In fact, Class Counsel were hired by Plaintiffs shortly before asserting the claims here.  (*See* Doc. #79 at 14).  Therefore, this factor does not call for an enhancement nor reduction in the lodestar.

### 12.     Awards in similar cases

"The reasonableness of a fee may also be considered in light of awards made in similar litigation within and without the court's circuit."  *Johnson*, 488 F.2d at 719.  In a case involving a potential recovery in a settlement of over $26,000,000.00, the capped fee is at the very low end of the spectrum of awarded fees in similar cases.  *See, e.g., Ruderman v. Wash. Nat'l Ins. Co.*, 2011 U.S. Dist. LEXIS 31887 (S.D. Fla. 2011) (awarding $1,647,330); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp.2d 1334, 1342, n.3 (S.D. Fla. 2007) (awarding $1,275,000); *Carneige v. Mut. Sav. Life Ins. Co.*, 2004 U.S. Dist. LEXIS 29404 (N.D. Ala. 2004) (awarding $2.35 million); *In re Sunbeam Sec. Litig.*, 176 F. Supp.2d 1323 (S.D. Fla. 2001) (awarding $27.5 million); *Diaz v. Hillsborough County Hosp. Auth.*, 2000 WL 1682918 (M.D. Fla. 2000) (awarding $1,140,000); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (awarding $13.3 million); *Mashburn v. National Healthcare, Inc.*, 684 F. Supp. 679 (M.D. Ala. 1988) (awarding $3,400,000); *In re Chicken Antitrust*

*Litig.*, 560 F. Supp. 963 (N.D. Ga. 1980) (awarding $3,659,864). As such, this factor weighs in favor of allowing the fees as capped by agreement.

## III.     Conclusion

Having considered all of the *Johnson* factors, the court finds that it is fair and reasonable to award Class Counsel, Davis & Norris LLP, fees in the amount of $1,005,000. Therefore, Class Counsels' Motion for Award of Attorneys' Fees is **GRANTED**.

**DONE and ORDERED this      8th        day of December, 2011.**

                                                                                    _____
                                                                                    **R. DAVID PROCTOR**
                                                                                    **UNITED STATES DISTRICT JUDGE**